1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**
9                            EASTERN DISTRICT OF CALIFORNIA
10

| | | |
|---|---|---|
| CAROLYN SUE WATTS, | ) | 1:11-cv-01331-SKO |
| | ) | |
| | ) | **ORDER REGARDING PLAINTIFF'S** |
| Plaintiff, | ) | **SOCIAL SECURITY COMPLAINT** |
| | ) | |
| v. | ) | (Doc. 1) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

18
19                              **BACKGROUND**

20          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security (the

21 "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB")

22 pursuant to Title II of the Social Security Act (the "Act").  42 U.S.C. § 405(g).  The matter is

23 currently before the Court on the parties' briefs, which were submitted, without oral argument, to

24 the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

25
26
_____

27          [1] The parties consented to the jurisdiction of the United States Magistrate Judge.  (Docs. 3, 8.)  On September
1, 2011, the action was assigned to the Honorable Sheila K. Oberto for all purposes.  *See* 28 U.S.C. § 636(c); Fed. R.
28 Civ. P. 73; *see also* L.R. 301, 305.

## FACTUAL BACKGROUND

Plaintiff was born in 1961, has a ninth-grade education, and previously worked as a veterinary assistant. (Administrative Record ("AR") 12, 13, 27.) On January 7, 2009, Plaintiff filed an application for DIB, alleging disability beginning November 19, 2008, due to degenerative disk disease, herniated disk, sciatica, arthritis, and depression. (AR 12, 73, 195.)

### A.     Medical Evidence

#### 1.     Physical Impairments

Plaintiff reported lower back pain from at least May 2002, when she sustained an injury while working as a veterinary assistant. (AR 253, 308, 356.) A May 20, 2002, X-ray of the lumbar spine revealed no fracture, dislocation, or focal bony lesion, and no spondylolysis or spondylolisthesis. (AR 451.) A Magnetic Resonance Imaging ("MRI") scan performed on August 21, 2002, showed degenerative disc disease, anterior disc protrusions with osteophytes from L1 to L4, and a L5/S1 right posteromedial disc protrusion measuring approximately 3 mm. (AR 247-48.) An October 1, 2002, electromyogram study showed mild slowing in the left common peroneal nerve, and the treatment notes indicate that Plaintiff had "poor pain tolerance for the EMG," but the results obtained were normal. (AR 251.) The study did not reveal a primary neurological condition to explain her pain, and recommended physical therapy or epidural injections. (AR 251.)

Dr. Dwight James examined Plaintiff in connection with a worker's compensation claim on January 24, 2003, and found that Plaintiff experienced a permanent and partial disability and was limited to light work. (AR 308-09.) Dr. Munir Uwadayah performed an orthopedic consultation on December 17, 2004, diagnosing Plaintiff with lumbar spine herniated nucleus pulposus and bilateral lower extremity radiculopathy. (AR 257.) Dr. Uwadayah, noting that Plaintiff was working on light duty, provided anti-inflammatory, analgesic and anti-spasmodic medication, and enrolled her in physical therapy. (AR 255, 258.) An October 4, 2005, MRI found minimal degenerative spondylosis in the lumbar spine and no spinal canal stenosis or additional focal abnormality to account for Plaintiff's reported pain. (AR 399.)

X-rays of Plaintiff's cervical spine taken on July 19, 2007, revealed mild cervical thoracic levoscoliosis, no fractures, and no significant degenerative disc disease. (AR 384.) X-rays of

Plaintiff's lumbar spine taken on March 21, 2008, revealed mild disc space narrowing at L5-S1 and no fractures.  (AR 364.)

Plaintiff was treated by Dr. Dinesh Sharma from August 2008 through March 2010.  (AR 400-01, 432-46, 477-90.)   An October 22, 2008, MRI of Plaintiff's lumbar spine showed disk degeneration and bulging at the L2/3, L3/4, L4/5 and L5/S1 levels, a small broad-based protrusion of the left posterolateral margin of the L4/5 disk that creates only a mild to moderate compromise of the left L4/5 neural foramen, and no disk herniations or severe central/peripheral spinal canal stenoses at any lumbar level.  (AR 399.)  Dr. Sharma's records from August 2008 through August 2009 indicate that Plaintiff presented with persistent lower back pain, and prescribed pain medication, a back brace, physical therapy, exercise, and muscle relaxants.  (AR 432-46.)  In a medical source statement[2] completed on March 26, 2009, Dr. Sharma opined that Plaintiff could lift or carry 20 pounds occasionally and less than 10 pounds frequently, could stand or walk less than two hours in an eight-hour day, sit less than six hours in an eight-hour day, needed to alternate between standing and sitting, and could occasionally climb, balance, stoop, kneel, crouch, or crawl. (AR 400-01.)  Dr. Sharma supported his opinions by referencing Plaintiff's MRI showing degenerative disc disease of the lumbar spine.  (AR 400.)

In April 2009, Dr. Frederick Young conducted an orthopedic examination of Plaintiff, and concluded that Plaintiff's objective findings did not correlate well with her subjective complaints. (AR 408.)   Dr. Young noted that he could find no appreciable compromise to Plaintiff's musculoskeletal system and Plaintiff should be able to perform normal duties.  (AR 408.)

On July 15, 2009, state agency physician Dr. Roger Fast concluded in a Residual Functional Capacity ("RFC")[3] Assessment that Plaintiff could lift and carry 20 pounds occasionally, 10 pounds

---

[2] A medical source statement is a statement by an acceptable medical source about what a claimant can still do despite his impairments based on the acceptable medical source's findings. 20 C.F.R. § 404.1513(b)(6).  "Acceptable medical sources" include licensed physicians.  *Id.* § 404.1513(a)(1).

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or an equivalent work schedule.  Social Security Ruling 96-8p.  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay

3

1   frequently, stand, walk, or sit about six hours in an eight-hour day, and had no other limitations. (AR

2   411.) Dr. Fast concluded that the MRI showing multi-level disc bulging and degenerative change

3   gave some credibility to Plaintiff's statements of pain, but he doubted Plaintiff's credibility given

4   that she apparently had no difficulty walking or sitting at her consultative examinations. (AR 411,

5   430.) Dr. Fast concluded that a light RFC was appropriate, noting that Dr. Sharma's less than

6   sedentary RFC was based totally on subjective findings and imaging studies. (AR 430.)

7           In August 2009, Dr. Maria Cunanan examined Plaintiff, and diagnosed her with lower back

8   pain and paresthesia in her feet. (AR 452, 455.) Dr. Cunanan noted that Plaintiff had a normal gait.

9   (AR 455.) On follow-up, Plaintiff exhibited localized superior lumbar edema and pain upon

10  palpitation, but otherwise her symptoms essentially remained unchanged. (AR 463-76.)

11          On September 2, 2009, Dr. Albert Lizarraras, the state agency consulting physician concluded

12  that Plaintiff's physical impairments were non-severe and found no objective support for Plaintiff's

13  allegations of lower back pain. (AR 462.) The consulting physician did not base his

14  recommendations on any of Dr. Sharma's handwritten notes, commenting that he "[couldn't] get

15  anything from them." (AR 461.)

16          An October 21, 2009, X-ray of Plaintiff's thoracic spine revealed mild hypertrophic changes

17  consistent with thoracic spondylosis, minimal loss of height in at least one lower thoracic

18  intervertebral disk, and minimal levoscoliosis of the upper thoracic and upper lumbar spine. (AR

19  482.) An X-ray of Plaintiff's lumbar spine performed the same day showed minimal hypertrophic

20  changes consistent with lumbar spondylosis and that the lumbar intervertebral disk spaces had

21  retained their normal height. (AR 482.) Further X-rays of Plaintiff's lumbar spine in December

22  2009 revealed only mild degenerative joint disease with anterior spurs. (AR 480.)

23          Dr. Sharma completed a RFC questionnaire in March 2010, diagnosing Plaintiff with lumbar

24  spine degenerative joint disease with a fair prognosis. (AR 486.) Dr. Sharma stated that Plaintiff's

25  pain frequently interfered with her attention and concentration, allowing her to maintain attention

26  for 20 minutes at a time. (AR 487.) He opined that Plaintiff was incapable of tolerating even "low

27

28  evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable
    impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

stress" jobs; Plaintiff could walk for one to two blocks; sit or stand for 10 minutes at a time; sit, stand, or walk for less than two hours in an eight-hour day; walk every 30 minutes for three minutes; and needed to alternate between sitting and standing or walking. (AR 488-89.) Furthermore, Dr. Sharma stated that Plaintiff would need to take unscheduled breaks; could rarely lift 10 pounds or less; could occasionally look down, turn her head, look up, or hold her head in a static position; and could rarely twist, stoop, crouch, or climb. (AR 489.) Dr. Sharma also concluded that Plaintiff likely would miss three to four days of work per month. (AR 490.) In support of his conclusions, Dr. Sharma referenced Plaintiff's MRI showing degenerative disc disease at the L4/5 and L5/S1 levels. (AR 487.)

### 2.    Mental Impairments

Plaintiff saw Dr. Roger Izzi in April 2009 for a psychiatric evaluation. (AR 402.) Dr. Izzi diagnosed Plaintiff with a depressive disorder, not otherwise specified, and opined that Plaintiff was capable of performing simple and repetitive type tasks on a consistent basis over an eight-hour period. (AR 404.) Dr. Izzi noted that Plaintiff was not receiving any mental health treatment. (AR 403.)

State agency physician Dr. A. Garcia evaluated Plaintiff's Mental RFC in July 2009, concluding that Plaintiff was able to sustain simple, repetitive tasks with adequate pace and persistence, and was able to relate to others and adapt to customary work pressure. (AR 428.)

**B.    Lay Witness Testimony**

On February 12, 2009, Wilma Hicks, Plaintiff's niece, completed a Third Party Function Report regarding Plaintiff's functioning. (AR 177-84.) Ms. Hicks stated that Plaintiff watched television and read, and could care for her personal needs, perform light housework, and visit with friends and family. (AR 177-81.) Ms. Hicks reported that Plaintiff's condition affected all postural areas, as well as concentration, "completing physcal [sic] tasks," and using her hands. (AR 182.)

**C.    Administrative Hearing**

The Commissioner denied Plaintiff's initial application on July 21, 2009, and again on reconsideration on September 17, 2009. (AR 73, 49.) Thereafter, on October 7, 2009, Plaintiff

1    requested a hearing before an Administrative Law Judge ("ALJ").  (AR 85.)  On June 10, 2010, ALJ

2    Sharon Madsen held a hearing in which Plaintiff and a vocational expert testified.  (AR 7-34.)

3           **1.**       **Plaintiff's Testimony**

4         Plaintiff testified that she is 5' 4" tall, weighs 158 lbs., is right-handed, and lives in a house

5    with her husband.  (AR 12.)  Plaintiff has a driver's license and drives.  (AR 13.)  Plaintiff could take

6    care of her personal hygiene with rest periods in between.  (AR 14.)  Plaintiff performed household

7    chores "not very often" and a little at a time.  (AR 14.)  Plaintiff cooked small meals, shopped, sewed

8    a little, watched TV, and read.  (AR 15.)  Plaintiff performed no yard work.  (AR 15.)  Plaintiff

9    attended church and visited friends and family.  (AR 15-16.)  Plaintiff took 30-40 minute naps three

10   or four times throughout the day (AR 16, 24), and testified that four days out of a week she does not

11   get out of bed (AR 25).

12        Plaintiff testified to constant pressure in her lower back, shooting pains down both legs, and

13   numbness in her left leg.  (AR 18.)  Plaintiff was most uncomfortable standing and most comfortable

14   in her recliner.  (AR 19.)  Plaintiff testified that her pain had gotten worse over the past couple years.

15   (AR 20.)  Plaintiff was taking Darvocet, Voltaren, Zanaflex, and Ibuprofen, and testified that the

16   medication "takes the edge off" of her pain.  (AR 20-21.)  Plaintiff stated that her medications, with

17   the exception of the Voltaren, made her sleepy.  (AR 23-24.)  Plaintiff was not receiving mental

18   health care.  (AR 23.)

19        According to Plaintiff, she could lift and carry no more than five to ten pounds, sit for 30 to

20   40 minutes, stand for 20 or 30 minutes, and walk about a block.  (AR 23.)  Plaintiff testified that she

21   had difficulty getting up after squatting, problems climbing stairs, and issues lifting both arms over

22   her head.  (AR 23.)  According to Plaintiff, three or four times a week for about an hour the pain was

23   so severe it affected her concentration.  (AR 25-26.)

24

25

26

27

28

## 2.    Vocational Expert Testimony

A vocational expert ("VE") testified that Plaintiff's past work as a veterinary assistant was medium[4] and [specific vocational preparation code] 4, semi-skilled.  (AR 27.)  Plaintiff's clerical skills were transferrable to the light level.[5]  The VE testified that a hypothetical person of the same age, education, and work history as Plaintiff, who could lift and carry 20 pounds occasionally, 10 pounds frequently, sit, stand, or walk with occasional stooping, crouching, and crawling, could not perform Plaintiff's past work, but could perform the full range of clerical work at the light level. (AR 28.)  Adding a sit-stand option would leave only one-third of the light skilled jobs.  (AR 29.) If that same person, with the sit-stand option, also required two to four breaks of 30 minutes a day, that "closes the all [sic] work that is normally found."  (AR 30.)

The VE testified that a person of the same age, education, and work experience as Plaintiff, who could sit less than two hours in an eight-hour day, stand or walk less than two hours in an eight-hour day, never lift and carry 20 pounds, rarely lift and carry 10 pounds, rarely twist, stoop, bend, crawl, climb ladders, or climb stairs, could not perform past relevant work or any normal work.  (AR 31.)  If that same person would also likely be absent from work three to four days a month, he or she could not perform Plaintiff's past relevant work or any other work in the national economy.  (AR 31-32.)

## D.    ALJ's Decision

On June 30, 2010, the ALJ issued a decision, finding Plaintiff not disabled since November 19, 2008.  (AR 57-72.)  The ALJ noted that Plaintiff had met the insured status requirements through December 31, 2013.  (AR 62.)  Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of November 19, 2008; (2) had the following severe impairments: lumbar degenerative disc disease; sciatica; and cervical and thoracic degenerative joint diseases; (3) did not have an impairment or combination of impairments that met

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, [the Commissioner determines] that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

1   or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;

2   (4) could not perform her past relevant work; and (5) had acquired work skills from past work that

3   were transferrable to jobs existing in significant numbers in the national economy.  (AR 62-67.)

4          The ALJ found that Plaintiff had the RFC to perform light work, limited to occasional

5   stooping, crouching and crawling.  (AR 62.)  In formulating the RFC, the ALJ gave little weight to

6   the opinions of Drs. Sharma and Young, and the ALJ assigned no weight to the opinion of the

7   reviewing physicians in assessing Plaintiff's mental impairments.  (AR 65.)

8          Plaintiff sought review of this decision before the Appeals Council on August 16, 2010.  (AR

9   152.)  On June 28, 2011, the Appeals Council denied review.  (AR 1-6.)  Therefore, the ALJ's

10  decision became the final decision of the Commissioner.  20 C.F.R. § 404.981.

11  **E.     Plaintiff's Appeal**

12         On August 11, 2011, Plaintiff filed a complaint before this Court seeking review of the ALJ's

13  decision.  Plaintiff contends that the ALJ erred in (1) failing to adopt the opinion of the treating

14  physician, Dr. Sharma; (2) failing to accurately summarize Dr. Sharma's assessment of March 29,

15  2009; and (3) finding Plaintiff not credible.

16                                    **<u>SCOPE OF REVIEW</u>**

17         The ALJ's decision denying benefits "will be disturbed only if that decision is not supported

18  by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

19  1999).  In reviewing the Commissioner's decision, the Court may not substitute its judgment for that

20  of the Commissioner.  *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

21  determine whether the Commissioner applied the proper legal standards and whether substantial

22  evidence exists in the record to support the Commissioner's findings.  *See Lewis v. Astrue*, 498 F.3d

23  909, 911 (9th Cir. 2007).

24         "Substantial evidence is more than a mere scintilla but less than a preponderance."  *Ryan v.*

25  *Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  "Substantial evidence" means "such

26  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

27  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305

28  U.S. 197, 229 (1938)).  The Court "must consider the entire record as a whole, weighing both the

1   evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may

2   not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*,

3   504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

4                                                          **APPLICABLE LAW**

5          An individual is considered disabled for purposes of disability benefits if he is unable to

6   engage in any substantial, gainful activity by reason of any medically determinable physical or

7   mental impairment that can be expected to result in death or that has lasted, or can be expected to

8   last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A),

9   1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003).   The impairment or

10  impairments must result from anatomical, physiological, or psychological abnormalities that are

11  demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of

12  such severity that the claimant is not only unable to do his previous work, but cannot, considering

13  his age, education, and work experience, engage in any other kind of substantial, gainful work that

14  exists in the national economy.   42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

15         The regulations provide that the ALJ must undertake a specific five-step sequential analysis

16  in the process of evaluating a disability.   In the First Step, the ALJ must determine whether the

17  claimant is currently engaged in substantial gainful activity.   20 C.F.R. §§ 404.1520(b), 416.920(b).

18  If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment

19  or a combination of impairments significantly limiting her from performing basic work activities.

20  *Id.* §§ 404.1520(c), 416.920(c).   If so, in the Third Step, the ALJ must determine whether the

21  claimant has a severe impairment or combination of impairments that meets or equals the

22  requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1.   *Id.*

23  §§ 404.1520(d), 416.920(d).   If not, in the Fourth Step, the ALJ must determine whether the claimant

24  has sufficient residual functional capacity despite the impairment or various limitations to perform

25  her past work.   *Id.* §§ 404.1520(f), 416.920(f).   If not, in the Fifth Step, the burden shifts to the

26  Commissioner to show that the claimant can perform other work that exists in significant numbers

27  in the national economy.   *Id.* §§ 404.1520(g), 416.920(g).   If a claimant is found to be disabled or

28

1    not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v.*

2    *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

3    **DISCUSSION**

4    **A.    Plaintiff's Credibility**

5            The ALJ found that Plaintiff's "medically determinable impairments could reasonably be

6    expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the

7    intensity, persistence and limiting effects of these symptoms are not credible to the extent they are

8    inconsistent with the . . . residual functional capacity assessment." (AR 66.)  Plaintiff contends that

9    the ALJ failed to set forth legally sufficient reasons for rejecting her subjective complaints.  (Doc.

10   11.)  According to the Commissioner, however, the ALJ gave valid reasons for finding Plaintiff not

11   entirely credible, namely, the ALJ found that "the objective evidence does not support the extent of

12   symptoms reported by the claimant," and the ALJ discussed Plaintiff's conservative treatment.  (Doc.

13   12.)

14           **1.    Legal Standard**

15           In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must

16   engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ

17   must determine whether the claimant has presented objective medical evidence of an underlying

18   impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id.*

19   The claimant is not required to show that her impairment "could reasonably be expected to cause the

20   severity of the symptom she has alleged; she need only show that it could reasonably have caused

21   some degree of the symptom." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036).  If the claimant meets

22   the first test and there is no evidence of malingering, the ALJ can only reject the claimant's

23   testimony about the severity of the symptoms if he gives "specific, clear and convincing reasons"

24   for the rejection. *Id.*  As the Ninth Circuit has explained:

25           The ALJ may consider many factors in weighing a claimant's credibility, including
             (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for
26           lying, prior inconsistent statements concerning the symptoms, and other testimony
             by the claimant that appears less than candid; (2) unexplained or inadequately
27           explained failure to seek treatment or to follow a prescribed course of treatment; and
             (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial
28           evidence, the court may not engage in second-guessing.

10

*Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009); 20 C.F.R. §§ 404.1529, 416.929.  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

**2.    Analysis**

In this case, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [her] alleged symptoms," that is, Plaintiff presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  (AR 66.)  Therefore, absent affirmative evidence of malingering, the ALJ's reasons for rejecting Plaintiff's testimony must be clear and convincing.  As discussed below, the Court finds that the ALJ failed to give clear and convincing reasons supported by the record to discount Plaintiff's credibility with respect to her physical impairments.[6]

The only portion of the ALJ's decision discussing Plaintiff's testimony is as follows:

> The claimant testified she can take care of her personal needs, with rest periods. She said she completes household chores, a little at a time, but does no sweeping or mopping. The claimant testified she prepares simple meals, does no yard work, watches television and visits with her mother and daughter. She stated she has pain in her lower back with shooting pain in her legs, as well as numbness in her legs. The claimant testified he [sic] also has a sore elbow. She stated she can lift and carry 5-10 pounds, sit for 20-40 minutes, and stand for 20-30 minutes. The claimant testified she has not received any mental health care.

(AR 66.)  The ALJ then summarily concluded that  "[t]he claimant is partially credible.  Although the medical records support the claimant's physical impairments, the objective evidence does not support the extent of symptoms reported by the claimant."  (AR 66.)

The ALJ did not adequately analyze Plaintiff's testimony in reaching her ultimate conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . residual functional capacity

---

[6] To the extent that the ALJ discredited Plaintiff's testimony regarding her mental impairments, Plaintiff does not claim any error, therefore the Court will not address the issue.

assessment." (AR 66.)   While the ALJ's decision set out the applicable law and summarized Plaintiff's testimony, no rationale or analysis is provided in supporting the ALJ's ultimate credibility finding.   *See Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." (internal quotation marks and citation omitted)).   The Court is left to evaluate the medical evidence in the first instance and draw its own conclusions about what evidence supports Plaintiff's statements or detracts from them.   This is not the role of a reviewing court.   *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (It is the province of the ALJ to make credibility determinations).   Moreover, Plaintiff's testimony included statements about the degree of her pain.   Pain testimony may not be rejected solely on the basis that it is not corroborated or supported by objective medical evidence.   *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir. 1989) ("[A]s we have repeatedly stated, the ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings").

The Commissioner's assertion that the ALJ provided valid reasons for discounting Plaintiff's testimony advances reasons not discussed or analyzed by the ALJ; it is post hoc rationale based on the ALJ's summary of Plaintiff's testimony.   *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (error to affirm ALJ's credibility decision based on evidence ALJ did not discuss); *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001) ("[W]e cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947))).   Specifically, the Commissioner presents various findings from the medical record, arguing that this evidence supports the ALJ's conclusion that the medical evidence did not support Plaintiff's lay statements of her pain and limitations.   While the evidence cited by the Commissioner might support a rejection of Plaintiff's statements, it was not discussed, cited, or invoked by the ALJ as a basis to reject the testimony.   Because the ALJ provided no discussion of the objective medical evidence that purportedly contradicted the lay statements, the ALJ's decision is not conducive to judicial review in this regard.

Further, the Commissioner asserts that the ALJ discussed Plaintiff's conservative treatment in considering her lay statements. (Doc. 12, 10:9-22.)   While the ALJ noted Plaintiff's treatment,

12

the ALJ did not characterize it as "conservative," and the pages of the ALJ's decision that the Commissioner cites merely set out the medical evidence and provide no discussion how this evidence impacted the ALJ's view of Plaintiff's credibility.  In sum, the ALJ failed to provide an analysis supporting the ultimate conclusion that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible."  (AR 66.)

**B.      The ALJ's Consideration of Dr. Sharma's Opinion**

Plaintiff contends that the ALJ erred in failing to adopt the testimony of Dr. Sharma, Plaintiff's treating physician.  (Doc. 11.)

**1.      Legal Standard**

The medical opinions of three types of medical sources are recognized in Social Security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)."  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion.  *Id.*  Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions.  *Id.*  If the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record.  *Id.* at 830-31; *accord Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009).  The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Tommasetti*, 533 F.3d at 1041.

**2.    The ALJ Provided a Specific and Legitimate Reason to Discredit Dr. Sharma's Opinion**

Here, the ALJ gave little weight to the opinion of Dr. Sharma, Plaintiff's treating physician, because he "apparently relied quite heavily on the subjective report of symptoms and limitations provided by the [Plaintiff]."  (AR 65.)

"A physician's opinion . . . premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (internal quotation marks omitted).  However, as explained above, the ALJ did not adequately analyze Plaintiff's credibility regarding her symptoms, therefore the ALJ may not reject Dr. Sharma's testimony on these grounds. *See Bray*, 554 F.3d at 1228 (ALJ properly may discount physician's opinion that is based solely upon claimant's self-reporting only if ALJ concludes claimant's self-reporting is not credible); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (medical opinion premised on subjective complaints may be disregarded where record supports ALJ in discounting claimant's credibility).

The ALJ also found that Dr. Sharma's opinion was "not supported by the objective evidence." (AR 65.)  This finding is not, without more, a sufficiently specific reason to reject Dr. Sharma's opinion.  *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

Finally, the ALJ found that Dr. Sharma's treatment notes are "brief and conclusory, providing very little explanation of the evidence relied on in forming his opinion." (AR 65.)  Specifically, the ALJ noted that Dr. Sharma initially opined that Plaintiff was capable of performing light work but he later stated that she was incapable of tolerating even low stress jobs, although there was no objective evidence of significant deterioration between the two diagnoses.  (AR 64.)  This is an appropriate basis to reject a physician's opinion, even that of a treating physician. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming ALJ's rejection of the

14

controverted opinion of claimant's treating physician because the opinion was conclusory, in checklist form, and not supported by the record as a whole, or by objective medical findings).

In sum, although the ALJ improperly discredited Dr. Sharma's opinion because it relied on Plaintiff's subjective testimony and because it was not supported by unspecified objective medical evidence, any errors related to these findings was harmless because the ALJ provided a specific and legitimate reason to reject Dr. Sharma's opinion – i.e., that it was too conclusive and unsupported by adequate findings.   *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

**3.      Any Error in Characterizing Dr. Sharma's March 26, 2009, Opinion was Harmless**

Plaintiff contends that the ALJ mischaracterized a portion of Dr. Sharma's March 26, 2009, assessment. (Doc. 11, p. 10.) Specifically, Plaintiff argues that while the ALJ stated that Dr. Sharma opined that Plaintiff could sit for six hours in an eight-hour day (AR 65), Dr. Sharma actually stated that Plaintiff was able to sit *less* than six hours a day, not up to six hours per day (AR 400). (Compare AR 65 *with* AR 400).   The ALJ does not appear to have accurately stated Dr. Sharma's March 26, 2009, opinion in this regard because the report clearly indicates that Plaintiff could sit for *less than* six hours in an eight-hour day, not *up to* six hours in an eight-hour day.   (AR 400.) However, any error in this regard did not affect the ALJ's ultimate disability decision.   The ALJ rejected Dr. Sharma's opinion as unsupported by findings and too conclusive; the decision to discredit the opinion was not predicated on a distinction between whether Plaintiff could sit for less than six hours a day or up to six hours per day.   Moreover, Plaintiff has not established how a limitation for sitting less than 6 hours a day precludes her from light work, even if Dr. Sharma's opinion was credited in this regard. Plaintiff has not established how any error in this regard is prejudicial. *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) (claimant's burden to establish prejudicial error).   Nevertheless, because this matter has been remanded on other grounds, the ALJ will have an opportunity to address this discrepancy on remand.

///

///

15

1    **C.      Remand is Required**

2           "The court shall have power to enter, upon the pleadings and transcript of the record, a

3    judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security,

4    with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  In Social Security cases,

5    the decision to remand to the Commissioner for further proceedings or simply to award benefits is

6    within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If

7    additional proceedings can remedy defects in the original administrative proceedings, a social

8    security case should be remanded.  Where, however, a rehearing would simply delay receipt of

9    benefits, reversal [and an award of benefits] is appropriate."  *Id.* (alteration in original) (internal

10   quotation marks omitted).

11          The Court has concluded that the ALJ erred in failing to provide clear and convincing reasons

12   based on substantial evidence in the record to discount Plaintiff's testimony.  (AR 66.)  As the Ninth

13   Circuit pointed out in *Connett*, a remand for further findings regarding the credibility of a Plaintiff

14   is an appropriate remedy.  *See Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (en banc)

15   (specifically affirmed district court's order remanding for further proceedings where ALJ failed to

16   explain with sufficient specificity the basis for rejecting claimant's testimony); *Byrnes v. Shalala*,

17   60 F.3d 639, 642 (9th Cir. 1995) ("We therefore remand this case to the ALJ for further findings

18   evaluating the credibility of [the claimant's] subjective complaints . . . ."); *Dodrill v. Shalala*,

19   12 F.3d 915, 919 (9th Cir. 1993) (specifically remanding for ALJ to "articulat[e] specific findings

20   for rejecting [the claimant's] pain testimony and the testimony of lay witnesses").

21          Here, there are insufficient findings regarding Plaintiff's subjective pain testimony that are

22   related to the medical evidence of record.  Accordingly, pursuant to *Connett*, *Bunnell*, *Byrnes*, and

23   *Dodrill*, *supra*, the Court will order that the matter be remanded to the ALJ for findings relating to

24   Plaintiff's credibility.

25                                          **CONCLUSION**

26          Based on the foregoing, the Court finds that the ALJ's decision is not supported by

27   substantial evidence and is, therefore, VACATED and the case is REMANDED to the ALJ for

28   further proceedings consistent with this order.  The Clerk of this Court is DIRECTED to enter

16

judgment in favor of Plaintiff Carolyn Sue Watts and against Defendant Michael J. Astrue,

Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   July 3, 2012**                                        /s/ Sheila K. Oberto
                                        UNITED STATES MAGISTRATE JUDGE

17